## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph A. Dickson |
| | : | |
| v. | : | Mag. No. 19-6530 |
| | : | |
| LUIS APONTE, and | : | **CRIMINAL COMPLAINT** |
| DENNY DIAZ | : | |

I, Special Agent Patrick Quinn, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Drug Enforcement Administration, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Special Agent Patrick Quinn
United States Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

March 4, 2019              at          Essex County, New Jersey
Date                                    County and State

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

### ATTACHMENT A

On or about March 2, 2019, in Hunterdon County, in the District of New Jersey and elsewhere, defendants

LUIS APONTE, and
DENNY DIAZ

did knowingly and intentionally conspire and agree with each other and others to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide), a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT B**

I, Patrick Quinn, am a Special Agent with the United States Drug Enforcement Administration ("DEA"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**Background**

1.      During an investigation into a drug trafficking organization ("DTO"), the DEA learned that defendant Luis Aponte ("Aponte") was transporting narcotics via tractor trailer. Based on that information, the DEA conducted surveillance of Aponte.

**Investigation**

2.      On or about March 1, 2019, Aponte drove a tractor trailer from California to a rest stop in or around Bloomsbury, New Jersey ("the Rest Stop"). Aponte remained at the Rest Stop until the next day. On or about March 2, 2019, law enforcement observed as Aponte exited his truck with a backpack and entered the front passenger side of a white Jeep (the "Jeep") in the parking lot of the Rest Stop. Law enforcement observed a male in the driver's seat of the Jeep, who was later identified as defendant Denny Diaz ("Diaz").

3.      After Aponte entered the Jeep, Diaz drove the Jeep out of the Rest Stop. While the vehicle was moving, agents observed Aponte remove a plastic bag (the "Plastic Bag") from his backpack and place it behind the driver's seat. A short distance from the rest stop, agents saw the Jeep pull over onto the road's shoulder.

4.      Shortly thereafter, law enforcement approached the stopped Jeep. As law enforcement approached the Jeep, they observed, in plain view through the window, the Plastic Bag, which contained what appeared to be multiple suspected kilogram bricks of narcotics. Based on the observed transaction and the suspected narcotics in plain view, law enforcement searched the Jeep. In the Plastic Bag, they found approximately seven (7) kilograms of suspected narcotics. In Aponte's backpack, which agents located in the back seat, there was approximately $17,000 in United States currency.

5.      Law enforcement subsequently field tested the suspected narcotics. The field test indicated positive for the presence of fentanyl.

6.     Law enforcement arrested Aponte and Diaz.   After waiving his Miranda rights, Aponte stated that he had additional narcotics in the truck. Aponte then provided written consent to search his truck.   Inside the truck, agents found suspected narcotics in the truck's cab and inside a refrigerator. Specifically, agents recovered approximately thirteen (13) kilograms of a substance that field tested positive for the presence of fentanyl and approximately five (5) kilograms of a substance that field tested positive for the presence of heroin.

7.     In total, law enforcement recovered approximately twenty (20) kilograms of a substance that field tested positive for the presence of fentanyl, and approximately five (5) kilograms of a substance that field tested positive for the presence of heroin.